# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 19, 2013

No. 11-41375

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

EVER ALEXANDER MARTINEZ-FLORES,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, BENAVIDES and HIGGINSON, Circuit Judges.

PER CURIAM:

This is a direct appeal from a felony conviction for illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and 1326(b). Appellant challenges only his sentence, arguing that his prior New Jersey conviction for third degree aggravated assault does not constitute a crime of violence under the sentencing guidelines. U.S.S.G. § 2L1.2(b)(1)(A)(ii). We agree and therefore VACATE the sentence and REMAND for resentencing.

## I.    BACKGROUND

Ever Alexander Martinez-Flores ("Martinez-Flores") pleaded guilty to illegal reentry into the United States after deportation. Martinez-Flores had a prior New Jersey conviction for third degree aggravated assault. The State of

No. 11-41375

New Jersey initially charged him by indictment with, among other things, second degree aggravated assault and "possess[ing] a certain weapon, that is, a broken beer bottle, with purpose to use it unlawfully against the person or property of another." Subsequently, without generation of a new charging instrument, he pleaded guilty to third degree aggravated assault. N.J. STAT. ANN. § 2C:12-1b(7). Based on this prior conviction, the probation officer recommended a 16-level increase to his offense level because aggravated assault is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Martinez-Flores objected to this sentencing enhancement, arguing that the New Jersey statute did not qualify as a crime of violence. Relying on this Court's opinion in *United States v. Ramirez*, 557 F.3d 200 (5th Cir. 2009), the district court overruled the objection and applied the 16-level enhancement. In *Ramirez*, this Court held that the district court did not plainly err in ruling that a New Jersey conviction for third degree aggravated assault constitutes a crime of violence under § 2L1.2. *Id.* at 207. Martinez-Flores now appeals to this Court.

II.     ANALYSIS

A.     Crime of Violence Enhancement

Martinez-Flores argues that his prior conviction for third degree aggravated assault does not qualify as a crime of violence under the guidelines and thus the district court erred in imposing a 16-level increase in his base offense level. An offense qualifies as a crime of violence under the pertinent sentencing guideline if it includes the element of use of force or constitutes an enumerated offense. § 2L1.2 cmt. n.1(B)(iii). Section 2L1.2 includes among the enumerated offenses the crime of "aggravated assault." *Id.* The guidelines, however, "do not define the enumerated crimes of violence," and therefore, "this

No. 11-41375

court adopts a 'common sense approach,' defining each crime by its 'generic, contemporary meaning.'" *United States v. Sanchez-Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006) (citations omitted).[1] "When comparing the state conviction with the generic, contemporary meaning of the crime, we examine the elements of the statute of conviction rather than the specifics of the defendant's conduct." *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006).

Martinez-Flores argues that his conviction does not qualify as a crime of violence because it requires only significant bodily injury and the Model Penal Code ("MPC") defines the enumerated felony of aggravated assault as involving serious bodily injury.[2]  In relevant part, the New Jersey statute of conviction provides as follows:  "A person is guilty of aggravated assault if he . . . [a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." N.J. STAT. ANN. § 2C:12-1b(7).  The MPC provides that a person commits aggravated assault when he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2).

---

[1]  Recently, this Court, sitting en banc, created a new "plain-meaning approach" for non-common-law enumerated offenses. *United States v. Rodriguez*, 711 F.3d 541, 544 (5th Cir. 2013) (en banc).  In *Rodriguez*, we explicitly noted that the new plain-meaning approach would not be employed in determining whether an aggravated assault conviction constitutes an enumerated offense. *Id.* at 552 n.17.  Thus, *Rodriguez* is inapplicable to the instant case.

[2]  Martinez-Flores asserts in his brief that 42 states and the District of Columbia define "serious bodily injury" or an equivalent term substantially the same as the MPC.

No. 11-41375

As previously stated, this Court has held that a district court did not plainly err in ruling that New Jersey's offense of third degree aggravated assault constitutes a crime of violence. *Ramirez*, 557 F.3d at 207. This Court noted that both the New Jersey statute and the MPC had similar intent requirements. The only difference was that the MPC defined aggravated assault as involving "serious bodily injury" and the relevant New Jersey statute defined it as involving "significant bodily injury." *Id.* at 206-07. This Court then recognized that the MPC "defines 'serious bodily injury' as 'bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.'" *Id.* at 206-07 (quoting Model Penal Code § 210.0(3)). On the other hand, New Jersey "defines 'significant bodily injury' as 'bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses.'" *Id.* at 207 (quoting N.J. STAT. ANN. § 2C:11-1d). New Jersey's second degree aggravated assault involves "serious bodily injury," which is defined as "'bodily injury to create substantial risk of death or which causes serious permanent disfigurement or a protracted loss or impairment of any function of the body member or organ.'" *Id.* at 207 (quoting N.J. STAT. ANN. § 2C:11-1b). The Court noted that the MPC and New Jersey define "serious bodily injury" very similarly. *Id.* This Court explained that "'[e]ven if the fit between the enumerated offense of aggravated assault and the ordinary, contemporary, and common meaning of aggravated assault may not be precise in each and every way, slight imprecision would not preclude [this Court from] finding a sufficient equivalence.'" *Id.* (quoting *United States v. Rojas-Gutierrez*, 510 F.3d 545, 549 (5th Cir. 2007)).

No. 11-41375

In *Ramirez*, this Court, reviewing only for plain error, held that "the difference in this case between significant bodily injury and serious bodily injury under New Jersey law is not enough to take the defendant's crime out of the common sense definition of the enumerated offense of aggravated assault." 557 F.3d at 207.[3] This Court in *Ramirez* did not separately analyze the prongs of the plain error test,[4] and thus, it never squarely addressed whether, under the first prong, the district court committed "error of any sort." *Rojas-Gutierrez*, 510 F.3d at 548; *cf. id.* at 550 (expressly concluding that the defendant "has not satisfied the first prong of the plain error standard, that is, the district court committed no error"). Because we review the district court's interpretation of the sentencing guidelines de novo, *see United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc), and because the Court in *Ramirez* did not conduct such a review, its holding does not control our analysis in this case.

Accordingly, the issue before us is whether, on de novo review, the difference between serious bodily injury and significant bodily injury is such a "slight imprecision" that it would not preclude a finding of "sufficient

---

[3] The Government's contention that the Court in *Ramirez* conducted a plenary de novo review is belied by the Court's introductory comment that its decision is "colored by the standard of review—plain error—which applies," 557 F.3d at 202, and its conclusion that "[o]*n plain error review*, the difference in this case between significant bodily injury and serious bodily injury under New Jersey law is not enough to take the defendant's crime out of the common sense definition of the enumerated offense of aggravated assault," *id.* at 207 (emphasis added).

[4] This Court finds "plain error only if: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights." *United States v. Gracia-Cantu*, 302 F.3d 308, 310 (5th Cir. 2002). If a defendant proves these three elements, this Court has the "discretion to correct the error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

equivalence." *Rojas-Gutierrez*, 510 F.3d at 549. In other words, this Court must determine whether the difference between significant and serious bodily injury is enough to take the third degree offense out of the common sense definition of aggravated assault.

Although it is a question of federal law whether an offense constitutes a crime of violence under § 2L1.2, "we look to state law to determine [the offense's] nature and whether its violation is a crime of violence under federal law." *United States v. Izaguirre-Flores*, 405 F.3d 270, 273 (5th Cir. 2005) (internal quotation marks and citation omitted). The legislative history sheds some light on the legislature's purpose in enacting the statute at issue. The legislature apparently was concerned that assaults involving injury more severe than simple assault[5] but not rising to the level of serious injury were not being punished appropriately. *State v. James*, 777 A.2d 1035, 1037 (N.J. Super. Ct. App. Div. 2001). To remedy this concern, the New Jersey legislature amended its aggravated assault statute by adding the instant third degree offense, creating "a criminal offense for attempting to cause or causing less than the '[s]erious bodily injury.'" *Id.* (citation omitted) (brackets in opinion). The legislative history explains that the "amendments are an attempt to address the problem of classifying certain types of assault which fall between simple assault and aggravated assaults where the victim suffers serious bodily injury. . . . These amendments are intended to provide an intermediate level of assault which is more serious than simple assault and yet may not result in serious injury." *Id.* (quoting Assembly Judiciary, Law and Public Safety Committee,

---

[5] The New Jersey offense of simple assault involves "bodily injury." N.J. STAT. ANN. § 2C:12-1a. New Jersey defines "bodily injury" as "physical pain, illness or any impairment of physical condition." N.J. STAT. ANN. § 2C:11-1a.

No. 11-41375

*Statement to Senate, No. 504* [L. 1995, c. 307, § 2] (April 12, 1995)).  The legislative history further provides that "'[a]n example of this intermediate type of assault would be a bar fight which erupts and in which one of the participants suffers a blow to the eye and which results in impaired vision for a few days but which does not result in permanent injury.'" *Id.* (quoting *Statement to Senate, No. 504*).

With respect to the New Jersey courts' interpretation of the nature of the aggravated assault statute, a "critical distinction between the second and third degree offenses is the extent of the bodily injury sustained by the victim." *State v. Mincey*, 2009 WL 4254651, at \*3 (N.J. Super. Ct. App. Div. Nov. 20, 2009) (unpublished).  Further, the duration of the injury is an important consideration in the courts' determination of the severity of the injury in that significant bodily injury is temporary, and serious bodily injury is protracted or permanent.  *See State v. Kane*, 762 A.2d 677, 681 (N.J. Super. Ct.  App. Div. 2000) (holding that injury was not a serious bodily injury because the record "is barren of evidence indicating that the victim's condition was protracted, prolonged or extended in time"); *see also State v. Cote*, 2010 WL 4120313, \*15–16 (N.J. Super. Ct. App. Div. May 21, 2010) (unpublished) (rejecting challenge to jury charge when jury was instructed that aggravated assault with significant bodily injury essentially has the same elements of aggravated assault with serious bodily injury except that significant bodily injury is a temporary injury in contrast to serious bodily injury, which is protracted).

In *United States v. Mungia-Portillo*, the appellant argued that the Tennessee offense of reckless aggravated assault did not comport with the MPC definition of aggravated assault because under the MPC the mental state "is a

7

kind of 'depraved heart' recklessness that is greater than the 'mere' recklessness required in Tennessee." 484 F.3d 813, 817 (5th Cir. 2007). This Court rejected that argument, explaining that it had previously held "that a prior statute of conviction need not perfectly correlate with the Model Penal Code; 'minor differences' are acceptable." *Id*. We pointed out that neither LaFave's treatise nor Black's Law Dictionary made a special note regarding the degree of mental culpability required for a typical aggravated assault. *Id*. We therefore inferred that mental culpability was "not dispositive of whether the aggravated assault falls within or outside the plain, ordinary meaning of the enumerated offense of aggravated assault." *Id*. We further opined that it was more important that the Tennessee statute included the two most common aggravating factors—causation of serious bodily injury and use of a deadly weapon—than a certain level of mental culpability. *Id*.; *accord United States v. Guerrero-Robledo*, 565 F.3d 940, 947 (5th Cir. 2009).

Here, the New Jersey third degree aggravated assault statute contains the aggravating factor of use of a deadly weapon[6] but does not require serious bodily injury. As in *Mungia-Portillo*, this Court may look to Professor LaFave's treatise and Black's Law Dictionary for guidance in determining whether the difference in the state statute and the MPC is sufficient to take the state statute out of the common meaning of aggravated assault. Black's Law Dictionary defines "aggravated assault" as follows: "Criminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp. by using a deadly

---

[6] *State v. Thomas*, 900 A.2d 797, 800 (N.J. 2006) (citing N.J. STAT. ANN. § 2C:12–1b(2) as third degree aggravated assault with a deadly weapon). However, Martinez-Flores was not convicted under that subsection.

weapon." BLACK'S LAW DICTIONARY 130 (9th ed. 2009) (citing Model Penal Code § 211.1(2)). That definition simply relies on the MPC and lists the previously mentioned two most common aggravating factors of aggravated assault.[7]

As previously set forth, New Jersey considers an eye injury lasting only a few days to constitute a significant bodily injury. *James*, 777 A.2d at 1037. Such an injury obviously would not be considered protracted or permanent and thus would not constitute serious bodily injury. Further, we are mindful of the Supreme Court's very recent admonition that when determining whether a prior conviction qualifies as an aggravated felony (albeit in the context of immigration law), our focus should be on the "minimum conduct criminalized by the state statute." *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684 (2013).

To summarize, it is clear that the New Jersey legislature was carving out a lesser included offense when it enacted third degree aggravated assault and only required significant bodily injury. *State v. Hudson*, 39 A.3d 150, 154 (N.J. 2012) (noting that third degree aggravated assault under N.J. STAT. ANN. § 2C:12-1(b)(7) was a lesser included offense of second degree aggravated assault). Simply put, significant bodily injury does not rise to the level of serious bodily injury. Serious bodily injury is a common aggravating factor that elevates simple assault to aggravated assault and is part of the contemporary, generic

---

[7] Professor LaFave's treatise describes three types of aggravated assault: assault involving use of a deadly weapon; assault upon victims of a certain status, such as law enforcement officers; and assault with intent to achieve a certain harm, such as to murder, rob, or "maim." 2 Wayne R. LaFave, Substantive Criminal Law, § 16.3(d). LaFave states that "one is guilty of the crime of assault with intent to maim only if he has an intention to cause that degree of harm which suffices for mayhem." *Id.* (citing *Hammond v. State*, 588 A.2d 345 (Md. 1991). "Mayhem" is generally defined as causing a permanent disability. *Hammond*, 588 A.2d at 347–48. In *Ramirez*, we recognized that "Professor LaFave's definition [of aggravated assault] does not reference a bodily injury, while the definition in Black's Law Dictionary more closely parallels the Model Penal Code's definition of aggravated assault." 557 F.3d at 207 n.4.

No. 11-41375

meaning of aggravated assault.    Guided by the MPC, the New Jersey legislature's intent to require less than serious bodily injury, the previously set forth New Jersey courts' interpretation of the distinction between serious and significant bodily injuries, and *Moncrieffe's* admonition to focus on the minimum conduct criminalized by the state statute, we are persuaded that causing or attempting to cause significant bodily injury does not fall within the common sense meaning of aggravated assault.    Stated another way, the difference between serious bodily injury and significant bodily injury is certainly not a "slight imprecision."  *Rojas-Gutierrez*, 510 F.3d at 549.[8]  Indeed, the difference is such that it precludes this Court from finding a sufficient equivalence.  *See id.* Thus, Martinez-Flores's third degree aggravated assault conviction does not constitute an enumerated offense.[9]

---

[8]    We note also that this same distinction among degrees of bodily injury has determinative consequences under federal criminal assault provisions.  *See* 18 U.S.C. §§ 113, 1365.

[9] As previously stated, an offense can also qualify as a crime of violence under the relevant sentencing guidelines if it includes as an element the use of force.  § 2L1.2, cmt. n.1(B)(iii).  The prior conviction statute for aggravated assault contains the element of attempting or causing significant bodily injury. N.J. STAT. ANN. § 2C:12-1b(7). Understandably, the Government does not actually assert that under Fifth Circuit precedent the instant statute has as an element the use of force.   Instead, it simply points out that the Third Circuit has held that the New Jersey statute's requirement of the use of force sufficient to cause physical pain or injury constitutes having the use of force as an element.  *United States v. Horton*, 461 F. App'x 179 (3rd Cir. 2012).  However, the Third Circuit's holding conflicts with our precedent rejecting the proposition that a defendant's causing bodily injury means that the statute has as an element the use of force.  *United States v. Vargas-Duran*, 356 F.3d 598, 606 (5th Cir. 2004) (en banc) (holding that a prior conviction for intoxication assault which required causation of bodily injury did not constitute a crime of violence under § 2L1.2); *United States v. Andino-Ortega*, 608 F.3d 305, 311 (5th Cir. 2010) (holding that the conviction for causing injury to a child is not an offense that has as an element the use of physical force). Accordingly, this Court's precedent precludes holding that the instant statute's requirement of causation of bodily injury constitutes having the use of force as an element, and thus, the statute does not qualify as a crime of violence under that test.

No. 11-41375

Accordingly, reviewing this claim de novo, we hold that it was error to rule that the instant offense constituted a crime of violence and apply the 16-level increase to the base offense level.   We must now determine whether the error was harmless.

B.      Harmless Error

The Government argues that any error was harmless because the district court's statements at the sentencing hearing show that it intended to apply the 18 U.S.C. § 3553 sentencing factors in deciding Martinez-Flores's sentence.  The Government also argues that the court emphasized the defendant's criminal record and history of violence.

To prove harmless error, the Government has the burden of convincingly demonstrating that the district court (1) would have imposed the same sentence absent the purported error, and (2) that it would have done so for the same reasons.  *United States v. Ibarra-Luna*, 628 F.3d 712, 714, 717 (5th Cir. 2010).

We agree with Martinez-Flores that the alleged error is not harmless. The Government does not expressly assert that the record clearly shows that the court would have imposed the same sentence if there had not been an error in calculating the guidelines range.  Instead, the Government points out that the district court thought the sentence was appropriate.  A review of the transcript of the sentencing hearing does in fact demonstrate that the court was concerned about Martinez-Flores's prior violent conduct and his criminal record.  However, the district court did not clearly state (and we cannot glean from the record) that it would impose the same sentence if there had not been a 16-level enhancement based on the prior crime of violence.  *See Ibarra-Luna*, 628 F.3d at 719 (explaining that although the district court's remarks indicated that it would

11

No. 11-41375

have imposed an above-guidelines sentence, the error was not harmless because this Court could not determine with "requisite certainty" that it "would have imposed precisely the same sentence" but for the guidelines error).  Thus, the error cannot be deemed harmless.

III.    CONCLUSION

In conclusion, we VACATE the judgment of sentence and REMAND for resentencing.  We express no view as to the appropriateness of a nonguidelines sentence and leave to the district court's discretion what sentence should be imposed on remand.